UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

GUY-MICHEL PHILOGENE, *individually
and derivatively on behalf of* VERITY
ASSOCIATES, LLC,

                       Plaintiffs,

            -against-

RONALD G. DUCKETT a/k/a RON
DOUGLAS, *et al.*,

                       Defendants.

------------------------------------------------

17cv7224

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Ronald G. Duckett a/k/a Ron Douglas ("Duckett"), Ron Duckett LLC, and Simon & Schuster, Inc. (together, "Defendants") move to stay or dismiss this copyright and trademark infringement action brought by Guy-Michel Philogene individually and on behalf of Verity Associates, LLC ("Verity"). For the reasons that follow, Defendants' motion is denied.

BACKGROUND

        This action arises out of a short-lived business venture between Philogene and Duckett and nearly a decade of ensuing litigation. The facts are derived from the First Amended Complaint except where otherwise stated, and presumed true on this motion. (See First Amended Complaint, ECF No. 60 ("Compl.").) In October 2001, Philogene and Duckett formed Verity, each taking a 50% share. (Compl. ¶ 22.) A year later, they entered into an Operating Agreement (the "Operating Agreement"), which identified Verity's purpose as "engag[ing] in online internet marketing and/or offline sales of information products developed on the World Wide Web, from its websites." (See Compl. Ex. B ("Operating Agreement") § A.5.) Philogene

and Duckett agreed not to own, manage, or work for a competing business. (Operating Agreement § B.9.)

Verity assembled a database of customers, established relationships with vendors, and developed strategies for conducting its business. (Compl. ¶¶ 31–33.) In 2009, Verity began selling recipe books copying dishes found at chain restaurants. (Compl. ¶¶ 23–24.) Duckett authored the first book, titled "America's Most Wanted Recipes" ("Book 1"). (Compl. ¶ 25.) Duckett transferred all copyright rights to Verity, and Verity registered as the copyright claimant. (Compl. ¶ 26; Ex. A.) Verity contracted with Simon & Schuster to publish Book 1. (Compl. ¶ 27.) In 2010, Duckett authored and Simon & Schuster published a second book titled "More of America's Most Wanted Recipes" ("Book 2"). (Compl. ¶ 68.)[1]

At some unspecified time, Philogene learned that Duckett had created another entity, Ron Duckett LLC, which was selling products similar to Verity's. (Compl. ¶¶ 39–43, 71.) When Philogene confronted Duckett, Duckett locked Philogene out of Verity's accounts and prevented him from accessing Verity's books and records. (Compl. ¶¶ 51–52, 62.)

In March 2009, Philogene sued Duckett in New York state court, accusing him of misappropriating Verity's business and breaching the Operating Agreement. (Compl. ¶ 53; Ex. C ¶ 26.) Duckett counterclaimed, asserting that Philogene breached the Operating Agreement by withdrawing from Verity. (See Declaration of Gregory D. Miller, ECF No. 67, Ex. A ("Amended Answer"), ¶¶ 47–48.)[2] Duckett asked the state court to declare that Philogene had disassociated from Verity and order Verity's dissolution. (Amended Answer ¶¶ 54, 56.)

---

[1] The copyright for Book 2 is not attached to the first amended complaint.
[2] This Court may consider this document as a matter of public record. See Reisner v. Stoller, 51 F. Supp. 2d 430, 440 (S.D.N.Y. 1999) ("The court may . . . take notice of matters of public record, such as pleadings and court orders from prior litigation between the parties.").

With that litigation pending, Ron Duckett LLC contracted with Simon & Schuster for two more volumes of America's Most Wanted Recipes. (Compl. ¶ 71.) Simon & Schuster published "America's Most Wanted Recipes Without the Guilt" ("Book 3") in 2011 and "America's Most Wanted Recipes Just Desserts" ("Book 4") in 2012. (Compl. ¶ 71.) Both works were registered to Ron Duckett LLC. (See Compl. Exs. F, F.1.) Simon & Schuster stopped paying royalties to Verity and started paying them to Duckett. (Compl. ¶ 83.)

Thereafter, Ron Duckett LLC and Simon & Schuster contracted for two more books. (Compl. ¶ 76.) Simon & Schuster published "America's Most Wanted Recipes at the Grill" ("Book 5") in 2014 and "America's Most Wanted Recipes Kids Menu" ("Book 6") in 2015. (Compl. ¶ 76.) Again, the copyrights were registered to Duckett. (See Compl. Exs. G, H.)

In May 2016, Duckett moved for summary judgment on his state-court request for dissolution. In August 2016, the state court denied that motion and also dismissed the remaining claims and counterclaims, reasoning that "the short period of time in which the parties operated in business together, the minimal capital investment on both sides, the approximately equal value of the services provided by both parties, and the fact that the parties are now engaged in competing businesses" warranted dismissal. (Compl. Ex. D, at 3.)

Philogene appealed the state court's dismissal. (Compl. ¶ 60.) While that appeal was pending, he filed this action. In July 2018, after briefing on this motion to dismiss was complete, the Appellate Division, Second Department reversed the state court's dismissal of Philogene's claims and remanded for further proceedings. See Philogene v. Duckett, -- N.Y.S.3d --, 2018 WL 3557728, at *1 (N.Y. App. Div. July 25, 2018).

In this action, Philogene asserts that Defendants infringed Verity's copyright to America's Most Wanted Recipes, as well as its trademark rights to the "America's Most Wanted

3

Recipes" title by publishing the subsequent works. (See Compl. ¶¶ 122, 125, 139, 152.) Philogene contends that the America's Most Wanted Recipes books are a series, meaning the latter editions are derivative of Verity's original work. (Compl. ¶¶ 69, 81–82.) Philogene brings thirteen state law claims based on allegations that Duckett, inter alia, prevented Philogene from accessing books and records, embezzled and commingled Verity's monies, depleted Verity's assets, misappropriated Verity's trade secrets, and interfered with Verity's business relationships. (See Compl. ¶¶ 38–39, 63, 88–99, 112–116.) Finally, Philogene seeks an accounting and an order appointing himself as Verity's receiver. (Compl. ¶¶ 238–248.)

## LEGAL STANDARD

Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (citation omitted). Under the Colorado River abstention doctrine, "in certain . . . 'exceptional circumstances' . . . a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and . . . conserve judicial resources." Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist., 673 F.3d 84, 101 (2d Cir. 2012) (citation omitted). Abstention is "generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." Niagara Mohawk Power Corp., 673 F.3d at 100 (citing Colo. River, 424 U.S. at 817).

For Colorado River abstention to apply, the federal and state court actions must first be parallel, meaning that "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." Dittmer v. Cty. of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998) (citation omitted). "Any doubt regarding the parallel nature of a federal and state

4

action should be resolved in favor of the exercise of federal jurisdiction." Shields v. Murdoch, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) (citation and quotation marks omitted). If the actions are parallel, the Court then considers: (1) the location of any res and whether one forum assumed jurisdiction of it; (2) convenience of the forums; (3) avoidance of piecemeal litigation; (4) the relative progress of the two actions; (5) which law provides the rule of decision; and (6) whether the state procedures adequately protect the plaintiff's federal rights. See Niagara Mohawk Power Corp., 673 F.3d at 100–01; Woodford v. Cmty. Action Agency of Greene Cty., Inc., 239 F.3d 517, 522 (2d Cir. 2001).

The standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is well documented. The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[A] court must accept as true all well-pleaded facts and draw all reasonable inferences in the light most favorable to the nonmoving party." Cohen v. Casper Sleep Inc., 2018 WL 3392877, at *2 (S.D.N.Y. July 12, 2018). In deciding a Rule 12(b)(6) motion, a court considers only the "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Isr. Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted).

DISCUSSION

I.  Motion for a Stay

Defendants contend that this action should be stayed based on the pending state court action. They stress that the state court action has been ongoing for years and overlaps in many respects with the claims in this action, meaning that a stay is proper under this Court's "exercise of its discretion . . . with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views." See Giulini v. Blessing, 654 F.2d 189, 194 (2d Cir. 1981).

At first blush, Defendants' proposal seems reasonable. After all, both this action and the state court litigation derive from Philogene and Duckett's underlying business disputes, and the state court action is further developed than this case. However, Defendants overlook that this action is fundamentally one of federal copyright and trademark infringement—claims that were not, and indeed partially cannot, be brought in state court.

Federal courts have original jurisdiction over federal trademark claims and exclusive jurisdiction over copyright claims. See 28 U.S.C. § 1338(a). "[W]here federal jurisdiction is exclusive, stays should not be entered." 5 Patry on Copyright § 17:57 (2018) ("By granting a stay, the federal court at least temporarily deprives the plaintiff of a forum provided for by Congress. . . ."); Andrea Theatres, Inc. v. Theatre Confections, Inc., 787 F.2d 59, 62 (2d Cir. 1986) ("[A]bstention is clearly improper when a federal suit alleges claims within the exclusive jurisdiction of the federal courts."); accord Minucci v. Agrama, 868 F.2d 1113, 1115 (9th Cir. 1989) ("Since [plaintiff's] copyright claim is within the exclusive jurisdiction of the federal courts, the Colorado River doctrine is inapplicable."). Thus, Defendants' argument that underlying ownership issues may be resolved in state court is irrelevant. Philogene has "strong

federal rights that must be protected by this Court." See Ackoff-Ortega v. Windswept Pac. Entm't Co., 98 F. Supp. 2d 530, 536 (S.D.N.Y. 2000); Richard Feiner & Co. v. Polygram Corp., 610 F. Supp. 250, 251–52 (S.D.N.Y. 1985) (concluding that a stay "would be improper because the state court lacks jurisdiction to adjudicate [plaintiff's] federal claim").

That Defendants request a stay rather than dismissal is of no moment. "When [Colorado River] speak[s] of 'the virtually unflagging obligation to exercise the jurisdiction given to them,' and of 'the heavy obligation to exercise jurisdiction,' . . . it is using language that speaks as much to a stay as to a dismissal." 17A Fed. Prac. & Proc. Juris. § 4247 (3d ed. 2018); see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 28 (1983) ("[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal.").

Moreover, the parties and issues in the two actions are not substantially identical. Simon & Schuster and Duckett LLC were added to this action, underscoring that the state-court action is a business dispute, while this action is premised on intellectual property. And the fact that the state appellate court recently reversed and remanded the state trial court's dismissal demonstrates that "no one—not even the [Defendants]—can predict with certainty when [that case] will actually be decided." See Am. First Fed., Inc. v. Gordon, 2016 WL 7477564, at *4 (S.D.N.Y. Dec. 29, 2016).

Therefore, although Defendants may prefer that this case be stayed as a matter of convenience, this case must proceed to the merits. "It may [seem] uneconomical and even 'vexatious' for a federal court to proceed where another suit is pending in a state court, but unless the federal action is one for declaratory judgment, inefficiency is a small price to pay for abiding by Congress's judgment." 5 Patry on Copyright § 17:57 (2018).

II.     Copyright Claims

Defendants contend that some of Philogene's copyright claims are time-barred. A party may assert a statute of limitations defense on a motion to dismiss "when the defect appears on the face of the complaint." Staehr v. Hartford Fin. Servs. Grp., 547 F.3d 406, 425–26 (2d Cir. 2008) (citation omitted). Defendants aver that the copyright claims are based on copyright ownership, not copyright infringement, meaning that Philogene ran out of time to bring them.

"Civil actions under the Copyright Act must be brought 'within three years after the claim has accrued.'" Kwan v. Schlein, 634 F.3d 224, 228 (2d Cir. 2011) (quoting 17 U.S.C. § 507(b).) "A[] [copyright] ownership claim accrues only once, when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." Kwan, 634 F.3d at 228 (citation and quotation marks omitted). A copyright registration triggers such inquiry, as it demonstrates that someone else is claiming ownership of the work. See Latin Am. Music Co. v. Spanish Broad. Sys., Inc., 232 F. Supp. 3d 384, 389 (S.D.N.Y. 2017).

In determining whether a copyright claim is based on ownership or infringement, a court does not rely on how the plaintiff labels his claim, but whether the allegations demonstrate that "copyright ownership rights are the true matters at issue." Big E. Entm't, Inc. v. Zomba Enters., Inc., 453 F. Supp. 2d 788, 793 (S.D.N.Y. 2006) (citation omitted). "[A] time-barred ownership claim will bar a claim for copyright infringement, where . . . the infringement claim cannot be decided without adjudication of a genuine dispute as to the plaintiff's ownership of the copyright." Kwan, 634 F.3d at 230. In Big East Entertainment, although the plaintiff characterized its claims as sounding in copyright infringement, the court recognized that the thrust of plaintiff's claims turned on ownership, and therefore ownership was "the essential issue." Big E. Entm't, 453 F Supp. 2d at 795; see also Kwan, 634 F.3d at 229 (recognizing that

8

action concerned ownership because it did not entail "extent or scope . . . of copying," but rather "who wrote [the work] in the first place").

Defendants' ownership argument is misplaced. This action fundamentally concerns infringement, not ownership. Philogene pleads that Verity holds the copyrights for Books 1 and 2. (See Compl. ¶¶ 26, 68, 122; Ex. A.) Defendants do not really dispute Verity's ownership—they never claim that Duckett owns that work, nor likely could they as the copyright registration shows otherwise. (See Compl. Ex. A.) Further, Philogene pleads that Defendants "copied, reproduced . . . and unlawfully created derivative works" of Verity's works. (Compl. ¶ 125.)

Therefore, the crux of this dispute is not who owns the America's Most Wanted Recipes series. It is that Duckett and Simon & Schuster infringed Verity's copyright through publishing the subsequent works, which Philogene alleges derive from and substantially copy the first work. See Flo & Eddie, Inc. v. Sirius XM Radio Inc., 80 F. Supp. 3d 535, 542–43 (S.D.N.Y. 2015) (rejecting argument that infringement claim was based on ownership because the defendant did "not claim ownership of the copyrights"); see also Walker v. Carter, 210 F. Supp. 3d 487, 507 (S.D.N.Y. 2016) (holding that the "ownership inquiry is aimed at determining if there is an actual dispute of ownership"). Ownership does not form the backbone of this dispute—infringement does.

Unlike ownership claims, "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement." Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 125 (2d Cir. 2014). In other words, an infringement claim accrues when "the copyright holder discovers, or with due diligence should have discovered, the infringement." Papazian v. Sony Music Entm't, 2017 WL 4339662, at *3 (S.D.N.Y. Sept. 28, 2017) (citation

9

omitted). Although Philogene is elliptical as to when he learned of Defendants' infringement, he is adamant that it was within three years of filing suit. Whether that representation is true is an issue of fact not determinable on the current record. See Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC, 23 F. Supp. 3d 344, 358 (S.D.N.Y. 2014) (denying motion to dismiss where complaint was "silent on when Plaintiff had 'actual or constructive discovery' of Defendants' purported infringement"). Defendants' contention that Philogene should have been aware of infringement because Simon & Schuster stopped paying Verity royalties is insufficient to bar this claim. Philogene only pleads that those royalties switched to Duckett "at some point." (Compl. ¶ 83.) Discovery will reveal precisely when that occurred and when Philogene was, or should have been, aware of it.

In determining whether Philogene's claims are time-barred, Defendants ask this Court to take judicial notice of certain testimony that Philogene provided in the state court action. "[F]ederal courts are empowered to take juridical notice of state court records and decisions. . . ." Toliver v. City of New York, 2011 WL 4964919, at *3 (S.D.N.Y. Sept. 15, 2011). Here, Defendants do not ask this Court to take notice of an official record or decision, but deposition testimony concerning a factual matter. "The argument that a court can rely on previous testimony on a motion to dismiss for the purpose of contradicting facts asserted in the complaint [has been] explicitly rejected by the Second Circuit." Johnson v. Levy, 812 F. Supp. 2d 167, 176 (E.D.N.Y. 2011) (citing Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006)). "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted . . . but rather to establish the fact of such litigation and related filings." Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998) (citation and quotation marks omitted).

10

Defendants rely on a Northern District of New York decision that considered prior testimony in determining when a party was on notice of a claim. See NXIVM Corp. v. Foley, 2015 WL 12748008, at *9 (N.D.N.Y. Sept. 17, 2015). There, the court held that it was "not concerned with the truth of the statements made in the . . . proceeding [but] only . . . that the[y] were made." NXIVM, 2015 WL 12748008, at *9. To the extent that NXIVM supports Defendants' position, it is not binding on this Court. And because it appears to be against the weight of authority, this Court declines to adopt its reasoning. See Goel v. Bunge, Ltd., 820 F.3d 554, 559–60 (2d Cir. 2016) (reversing district court's reliance on prior testimony on a motion to dismiss where the testimony was not referred to or integral to the complaint); Lopez-Serrano v. Rockmore, 132 F. Supp. 3d 390, 400 (E.D.N.Y. 2015) (same).

III.  Trademark Claims

Philogene brings an unfair competition claim under the Lanham Act, as well as unfair competition and trademark infringement claims under common law based on Defendants' use of the "America's Most Wanted Recipes" title. Although "America's Most Wanted Recipes" is unregistered, Philogene contends that it "has acquired a significant degree of consumer recognition, and thus, has acquired secondary meaning." (Compl. ¶ 46.)

Under Section 43(a) of the Lanham Act,[3] "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol or device, or any combination therefore, or any false designation of origin . . . which . . . is likely to cause confusion, or to cause mistake, or deceive as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods,

---

[3] In the first amended complaint, Philogene pleads that this claim derives under 15 U.S.C. § 1126. (Compl. at 24.) This Court assumes that this was a drafting error because the substance of Philogene's claim clearly derives under 15 U.S.C. § 1125, more commonly known as Section 43(a).

11

services, or commercial activities by another person . . . shall be liable in a civil action." 15 U.S.C. § 1125(a)(1). "At its core, an unfair competition claim under the Lanham Act examines whether the public is likely to be misled into believing that the defendant is distributing products manufactured or vouched for by the plaintiff." KatiRoll Co. v. Kati Junction, Inc., 2015 WL 5671881, at *4 (S.D.N.Y. Sept. 25, 2015) (citation and quotation marks omitted). "[R]egistration is not a requirement for protection under the Lanham Act." Warner Bros., Inc. v. Gay Toys, Inc., 658 F.2d 76, 78 (2d Cir. 1981). The elements for trademark infringement and unfair competition under New York law mirror the elements under the Lanham Act, but common law unfair competition requires a showing of bad faith. KatiRoll Co., 2015 WL 5671881, at *5.

"Titles of works of artistic expression, including films, plays, books, and songs, that have acquired secondary meaning are protected from unfair competition under § 43(a)." EMI Catalogue P'ship v. Hill, Holiday, Connors, Cosmopulos Inc., 228 F.3d 56, 63 (2d Cir. 2000). In briefing, Defendants initially contended that Philogene's trademark claims were duplicative of their copyright claims, and therefore barred under Dastar Corp. v. Twentieth Century Fox Film Corp. See 539 U.S. 23, 34 (2003) (holding that parties cannot use trademark law to protect creative works as it "would create a species of mutant copyright law"). In oral argument, Defendants agreed to forego this contention with the understanding that Philogene's trademark claims only derive from Defendants' use of the "America's Most Wanted Recipes" title. (See Apr. 20, 2018 Hr'g Tr., ECF No. 73, at 11:24–12:11.) Accordingly, this Court has not considered this argument.

Defendants instead focus on the equitable defense of laches.[4] Laches requires showing "that plaintiff had knowledge of defendant[s'] use of its marks, that plaintiff

---

[4] Defendants also claim a statute of limitations defense. "In contrast to the Copyright Act, the Lanham Act . . . contains no statute of limitations, and expressly provides for defensive use of 'equitable principles, including

inexcusably delayed in taking action with respect thereto, and that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights." George Nelson Found. v. Modernica, Inc., 12 F. Supp. 3d 635, 655 (S.D.N.Y. 2014). "Actual knowledge on the plaintiff's part is not required; rather, the issue is whether the plaintiff knew or should have known about the allegedly infringing use." Argus Research Grp., Inc. v. Argus Media, Inc., 562 F. Supp. 2d 260, 272 (D. Conn. 2008).

Courts in this Circuit apply the six-year New York statute of limitations for fraud claims in determining whether a laches defense applies. See Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996). "[A] cause of action under the Lanham Act accrues at the time the plaintiff discovered the fraud, or could with reasonable diligence have discovered it." Carell v. Shubert Org., 104 F. Supp. 2d 236, 260 (S.D.N.Y. 2000) (citation and quotation marks omitted). "[P]rior to the running of the most closely analogous state statute of limitations there is no presumption of laches and the burden remains on the defendant to prove the defense. Alternatively, once the analogous statute has run, a presumption of laches will apply and plaintiff must show why the laches defense ought not to be applied in the case." Conopco, 95 F.3d 187. Book 3 was published in September 6, 2011. (Compl. Ex. F.) Philogene did not file suit until September 22, 2017, exceeding the six-year limit by sixteen days.

"In order to prevail on the affirmative defense of laches, a defendant must prove that it has been prejudiced by the plaintiff's unreasonable delay in bringing the action." Conopco, 95 F.3d at 192. Defendants claim that they were prejudiced because they released

---

laches.'" Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962, 1974 n.15 (2014) (citing 15 U.S.C. § 1115(b)(9)). Therefore, courts do not consider statute of limitation for trademark claims, but "look to the most appropriate or most analogous state statute of limitations for laches purposes." Conopco, 95 F.3d at 191 (citation and quotation marks omitted).

13

other volumes of the America's Most Wanted Recipes series. In other words, they relied on Philogene's acquiescence to their disadvantage.

However, factual disputes defeat this defense. "The defense of laches is not appropriately raised in a motion to dismiss, unless it is clear on the face of the complaint and plaintiff can prove no set of facts to avoid the insuperable bar." Carell, 104 F. Supp. 2d at 263 (citation omitted); see also George Nelson Found., 12 F. Supp. 3d at 655 (denying laches defense on motion to dismiss because "there are several issues of disputed fact that must be resolved to make such a finding"). Laches involves more than a length of time—Defendants must show that Philogene is guilty of unreasonable delay and that such delay caused them prejudice. These contentions inherently require "consideration of fact issues outside the pleadings." See Bolanos v. Norwegian Cruise Lines Ltd., 2002 WL 1465907, at *7 (S.D.N.Y. July 9, 2002), report and recommendation adopted by 2004 WL 769766 (S.D.N.Y. Apr. 12, 2004). Philogene contends that he reasonably did not know of infringement and that Defendants' claims of prejudice are conclusory. As there has been no discovery, all that Defendants have offered so far is "general speculation that a sophisticated party such as [Plaintiff] must have known about the" subsequent works. See Web-adviso v. Trump, 927 F. Supp. 2d 32, 49 (E.D.N.Y. 2013). This argument is more appropriate on a motion for summary judgment or at trial.

Similarly, "the Second Circuit has made clear that, regardless of the length of the [plaintiff's] delay, laches cannot be a defense to intentional infringement, as it is an equitable defense and the defendant asserting it must come to court with clean hands." Gucci Am., Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 244 (S.D.N.Y. 2012); see Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000). Because Duckett was a member of Verity and knew that Verity originally used the "America's Most Wanted Recipes" title, an argument can be

14

made that his use of the same title was intentional. See Victorinox AG v. B&F Sys., Inc., 114 F. Supp. 3d 132, 137 (S.D.N.Y. 2015) (denying laches defense on summary judgment where defendants' knowledge of infringement was "inescapable").

IV.     State Law Claims / *Res Judicata*

Defendants move to dismiss Philogene's state law claims based on lack of federal jurisdiction, res judicata, and collateral estoppel. Because this Court denies Defendants' motion to dismiss the federal claims, their argument that the state law claims fail based on a lack of federal jurisdiction is denied as moot. Defendants also contend that collateral estoppel bars all state law claims that Philogene raised in the state court action, and that res judicata bars all state law claims that Philogene failed to raise in the state court action.

Under the concept of res judicata, "a final judgment on the merits precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000) (citing Allen v. McCurry, 447 U.S. 90, 94 (1980)). Collateral estoppel "bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding if that party had a full and fair opportunity to litigate the issue in the prior proceeding." Monahan, 214 F.3d at 284 n.5 (citation and quotation marks omitted).

As previously explained, the Second Department reversed the dismissal of Philogene's claims and remanded the lawsuit to the state trial court. See Philogene, 2018 WL 3557728, at *1. "A judgment vacated or set aside has no preclusive effect." Ling Nan Zheng v. Liberty Apparel Co., 556 F. Supp. 2d 284, 294 (S.D.N.Y. 2008); see also 18A Fed. Prac. & Proc. Juris. § 4427 (2d ed. 2018) ("Should the judgment be vacated by the trial court or reversed on appeal . . . res judicata falls with the judgment."). Philogene's state law claims were not finally

decided and continue to be litigated. Accordingly, collateral estoppel and res judicata do not bar them.

## CONCLUSION

For the foregoing reasons, Defendants' motions for a stay and to dismiss the first amended complaint are denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 64.

Dated: August 16, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.